# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

| | |
|---|---|
| **FREDDIE R. LEWIS** | **CIVIL ACTION NO. 07-394-P** |
| **VERSUS** | **JUDGE STAGG** |
| **BOSSIER PARISH SHERIFF'S DEPARTMENT, ET AL.** | **MAGISTRATE JUDGE HORNSBY** |

### REPORT AND RECOMMENDATION

**Introduction**

Before the Court is a civil rights complaint filed in forma pauperis by pro se plaintiff Freddie R. Lewis ("Plaintiff"), pursuant to 42 U.S.C. § 1983.[1]  This complaint was received and filed in this Court on March 1, 2007.  Plaintiff was  a pre-trial detainee detained at the Bossier Parish Penal Farm in Plain Dealing, Louisiana when he filed this complaint.  He is currently incarcerated at the Winn Correctional Center in Winnfield, Louisiana.

Plaintiff names as defendants:  the Bossier Parish Sheriff's Department, Sheriff Larry C. Dean, the Parish of Bossier, George Henderson, Warden Mark Toloso, Warden Dennis Weaver, Assistant Warden Joe Lee, Assistant Warden Stokes, Sgt. Shelton, Agent T. Smith, Bossier City Police Chief, the City of Bossier, Nursing Assistant Thornhill, Nursing Assistant David, Officer M. Teutsch, Deputy Hall, Deputy J. Martin, Deputy Prather, Sgt. Pierce,

---

[1] Plaintiff has also asserted claims against several Defendants for retaliation for filing actions in this court and failure to provide medical treatment.  These claims require further review and will be addressed in a separate memorandum order.

Bossier Parish Minimum Security Facility Medical Staff, Judge J. Marion Robinson, District Attorney Marvin, Steve Broadenski, Sgt. Wadsworth, Deputy Porter, Deputy Jones.

**Prescription**

In <u>Wilson v. Garcia</u>, 471 U.S. 261 (1985), the Court articulated the guidelines to be used in determining what prescriptive period should apply to Section 1983 claims.  The Court determined "§ 1983 claims are best characterized as personal injury actions" and the forum state's statute of limitations applicable to such claims should be used.  <u>Id</u>. at 280.  In <u>Gates v. Spinks</u>, 771 F.2d 916 (5th Cir. 1985), the Fifth Circuit Court of Appeals phrased the test as:  "The state statute governing the general tort remedy for personal injuries should apply to 1983 actions . . ." <u>Gates</u>, 771 F.2d at 919.

The Louisiana Civil Code provides a general prescriptive statute that governs tort actions.  The article subjects delictual actions to a liberative prescription of one year.  <u>See</u> La. C.C. art. 3492.  The Fifth Circuit qualified this prescriptive period, however, when it held that "a section 1983 action accrues and the statute of limitations begins to run when the plaintiff knows or has reason to know of the injury which is the basis for the action." <u>Watts v. Graves</u>, 720 F.2d 1416, 1417 (5th Cir. 1983).  Finally, prescription on the claim is tolled while the administrative remedy procedure is pending.  <u>See</u> <u>Harris v. Hegmann</u>, 198 F.3d 153 (5th Cir. 1999).

**Claims arising out of November 18, 2005 arrest**

Plaintiff claims his civil rights were violated on November 18, 2005, because Sgt. Shelton and another officer falsely arrested him and dislocated his right shoulder during the arrest. He also claims he received no medial treatment for his shoulder while in the custody of the Bossier City Police Department. Prescription began to run as to these claims in November 2005.  The above entitled and numbered complaint was not signed by Plaintiff until February 26, 2007, and it was not filed by the Clerk of Court until March 1, 2007. Plaintiff's claims are, therefore, prescribed.

Accordingly, Plaintiff's civil rights claims against Sgt. Shelton, the Bossier City Police Department, and the Bossier City Police Chief regarding his alleged false arrest, shoulder injury, and denial of medical treatment on November 18, 2005, should be dismissed as frivolous.

**Claims arising out of November 19, 2005 transfer**

Plaintiff claims that on November 19, 2005, he was transferred to the Bossier Parish Maximum Security Facility.  He complains that inmates booked into custody at the facility are not tested for communicable diseases and as a result he was exposed to diseases such as tuberculosis, staff infection, and hepatitis.  He further complains that there were brown recluse spiders at the facility.

Plaintiff also claims that he was forced to buy a thermal shirt from the facility.  He claims items such as underwear, socks, hygiene products, stamps, paper, and envelopes could only be purchased at the commissary and not from outside sources.

Prescription began to run as to these claims in November 2005 when he was transferred to the Bossier Parish Maximum Security Facility.  The above entitled and numbered complaint was not signed by Plaintiff until February 26, 2007, and it was not filed by the Clerk of Court until March 1, 2007.  Plaintiff's claims are, therefore, prescribed.

Accordingly, Plaintiff's civil rights claims against the Parish of Bossier regarding the testing of inmates for communicable diseases, his alleged exposure to communicable diseases, and the commissary policies at the Bossier Parish Maximum Security Facility should be dismissed as frivolous.

**Claims arising out of November 19, 2005 request for medical treatment**

Plaintiff claims that on November 19, 2005, he filed a medical request to Medical Assistant Thornhill and Medical Assistant David because of his shoulder injury.  He claims that on November 21, 2005, he again sought medical assistance for his shoulder injury.  He claims he did not receive a response until December 2005 when his shoulder was examined and he was diagnosed as having an extended dislocation of his right shoulder.  He claims that on December 20, 2005, the Bossier Parish mobile x-ray came to the facility.  He claims he was prescribed pain medication and charged $25.00.  He complains that he was not

transported to LSU Medical Center for an examination and treatment.  Plaintiff complains that he was charged approximately $30.00 a month for the medication.

Prescription began to run as to these claims in December 2005 at the latest.  The above entitled and numbered complaint was not signed by Plaintiff until February 26, 2007, and it was not filed by the Clerk of Court until March 1, 2007.  Plaintiff's claims are, therefore, prescribed.

Accordingly, Plaintiff's civil rights claims against Medical Assistant Thornhill and Medical Assistant David regarding his alleged inadequate medical treatment in November and December of 2005 should be dismissed as frivolous.

**Claims arising out of denial of access to the courts while at Bossier Parish Maximum Security Facility from November 10, 2005 until February 22, 2005**

Plaintiff claims that while incarcerated at the Bossier Parish Maximum Security Facility, Warden Weaver, Assistant Warden Stokes, Sgt. Wadsworth, Sgt. Jones, Deputy Pierce, Deputy Porter, and Deputy Martin informed him that here were no civil rights forms at the facility.  He further claims he was denied legal counsel and assistance, a law library and books, and legal supplies.  He further claims he did not have the correct mailing address for the federal and state courts until November 30, 2005.  He claims that on February 8, 2005, Deputy Martin, Deputy Porter, Sgt, Jones, and Sgt. Wadsworth threw away his IFP applications.

Prescription began to run as to these claims on February 23, 2006 at the latest.  The above entitled and numbered complaint was not signed by Plaintiff until February 26, 2007,

and it was not filed by the Clerk of Court until March 1, 2007.  Plaintiff's claims are, therefore, prescribed.

Accordingly, Plaintiff's civil rights claims against Warden Weaver, Assistant Warden Stokes, Sgt. Wadsworth, Sgt. Jones, Deputy Pierce, Deputy Porter, and Deputy Martin regarding the denial of access to the courts while detained at the Bossier Parish Maximum Security Facility should be dismissed as frivolous.

**Threats and Transfer to Work Camp**

Plaintiff claims that, on February 22, 2006, Assistant Warden Stokes threatened him and, approximately 15 minutes later, Plaintiff was transferred to the Bossier Parish Minimum Security Work Camp.  He claims he was transferred in retaliation for filing the civil actions against Bossier Parish.

These claims are untimely.  Prescription began to run as to these claims on February 23, 2006 at the latest.  The above entitled and numbered complaint was not signed by Plaintiff until February 26, 2007, and it was not filed by the Clerk of Court until March 1, 2007.  Plaintiff's claims are, therefore, prescribed.

Furthermore, verbal abuse and harassment do not constitute cruel and unusual punishment as contemplated by the Eighth Amendment, and allegations of such, without more, are insufficient grounds for relief under 42 U.S.C. § 1983. See Collins v. Cundy, 603 F.2d 825 (10th Cir. 1979); Ellingburg v. Lucas, 518 F.2d 1196 (8th Cir. 1975).  The Fifth Circuit held that "mere threatening language and gestures of a custodial officer do not, even

if true, amount to constitutional violations." Lynch v Cannatella, 810 F.2d 1363, 1376 (5th

Cir. 1987) (citing McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir. 1983)).  Even if Plaintiff

was subjected to threats as alleged, this claim does not amount to harm sufficient to

constitute a constitutional violation.

Moreover, the United States Supreme Court has held that it is for state prison

authorities to decide where a state prisoner is to be incarcerated, and that a prisoner has no

right to challenge his place of incarceration.  See Olim v. Wakinekona, 461 U.S. 238, 103

S.Ct. 1741, 75 L.Ed.2d 813 (1983); Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532, 49

L.Ed.2d 451 (1976).

Accordingly, Plaintiff's claims against Assistant Warden Stokes arising out of the

February 22, 2006 confrontation and transfer should be dismissed with prejudice as frivolous.

**Claims arising out of cell search while incarcerated at the Bossier Parish Maximum Security Facility from November 10, 2005 until February 22, 2005**

Plaintiff claims that in February 2005, he complained because Deputy Martin failed

to return his IFP application to him.  He claims that because he complained about Deputy

Martin's actions, Deputy Porter and Deputy Martin searched his cell.  He further claims they

threw away his medication because they erroneously assumed he was accumulating it. He

claims Deputy Porter did not realize that he had purchased the medication.

Plaintiff claims that on February 8, 2006, Deputy Martin, Deputy Porter, Sgt. Jones,

and Sgt. Wadsworth threw away his IFP applications.  Plaintiff claims that on February 21,

2006, Officer Burton sent him a response informing him that she had completed one IFP

application and given it to the booking desk to return to him.    He claims that on February 22, 2006, Assistant Warden Stokes threatened him and threw Officer Burton's response regarding the IFP application in his face.  He claims that 15 to 30 minutes later, he was transferred to the Bossier Parish Minimum Security Pea Farm Work Camp.  He claims he was transferred in retaliation for his filing of civil actions against Bossier Parish.

Prescription began to run as to these claims on February 23, 2006 at the latest.  The above entitled and numbered complaint was not signed by Plaintiff until February 26, 2007, and it was not filed by the Clerk of Court until March 1, 2007.  Plaintiff's claims are, therefore, prescribed.

Accordingly, Plaintiff's civil rights claims against Deputy Porter and Deputy Martin regarding the retaliatory search of his cell and the disposal of his medication at the Bossier Parish Maximum Security Facility should be dismissed as frivolous.

**Claims arising out of February 20, 2006 medical examination**

Plaintiff claims that on February 20, 2006, he was examined by an LSU Medical Center doctor.  He claims the doctor reviewed the X-rays taken by the mobile unit and found them inadequate.  He claims the doctor ordered him transported to LSU Medical Center for X-rays, examination, and treatment.  He further claims the doctor prescribed Tylenol for his pain for ten days and ordered that he be transported to LSU Medical Center if the pain did not stop.  Plaintiff claims Warden Weaver, Assistant Warden Stokes, Medical Officer Thornhill, and Medical Officer David did not comply with the doctor's instructions and denied him medical treatment.

Prescription began to run as to these claims on February 23, 2006 at the latest, the day after he was transferred to the Bossier Parish Minimum Security Facility.  The above entitled and numbered complaint was not signed by Plaintiff until February 26, 2007, and it was not filed by the Clerk of Court until March 1, 2007.  Plaintiff's claims are, therefore, prescribed.

Furthermore, Plaintiff admits that the doctor prescribed ten days of pain medication for him and ordered that he be taken to LSU Medical Center if his pain continued.  Plaintiff was no longer detained at the Bossier Parish Minimum Security Facility after his pain medication ended.  Therefore, Warden Weaver, Assistant Warden Stokes, Medical Officer Thornhill, and Medical Officer David did not fail to comply with the doctor's instructions.

Accordingly, Plaintiff's civil rights claims against Warden Weaver, Assistant Warden Stokes, Medical Officer Thornhill, and Medical Officer David regarding his inadequate medical treatment in February 2006 should be dismissed as frivolous.

**Claims arising out of February 24, 2006 medical visit**

Plaintiff claims that on February 24, 2006, Medical Assistant Steve Broadenski discontinued his medication prescribed on February 20, 2006, because he felt that his shoulder was healed.  He further claims that he was charged $10.00 for a sick call visit.  He claims he was charged with refusing medical attention because he refused to sign a receipt. Plaintiff admits that on March 1, 2006, Medical Assistant Steve Broadenski reinstated his prescription.

Prescription began to run as to these claims on February 25, 2006.  The above entitled and numbered complaint was not signed by Plaintiff until February 26, 2007 and it was not

filed by the Clerk of Court until March 1, 2007.  Plaintiff's claims are, therefore, prescribed.

Accordingly, Plaintiff's civil rights claims against Medical Assistant Broadenski arising out of his February 24, 2005 medical visit should be dismissed as frivolous.

**Classification**

Plaintiff complains about the way that the Bossier Parish Sheriff's Department classifies inmates.  He also complains that the Bossier Parish Sheriff's Department and Bossier City Police Department use patrolman as jailers instead of certified correctional officers in violation of his constitutional rights.  These are not claims that this Court can resolve.  Federal courts should not, under the guise of enforcing constitutional standards, assume the superintendence of state prison administration.  See Jones v. Diamond, 636 F.2d 1364, 1368 (5th Cir. 1981) (en banc) (overruled on other grounds).  Thus, this Court accords state prison administrators wide-ranging deference to adopt and to execute policies and practices that are needed to maintain and preserve order, discipline, and security in prison. See Bell v. Wolfish, 441 U.S. 520, 547 (1979).

The classification of prisoners is such a practice that is left to the discretion of prison officials.  See McCord v. Maggio, 910 F.2d 1248, 1250 (5th Cir. 1990).  "It is well settled that '[p]rison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status'." McCord, 910 F.2d at 1250 (quoting Wilkerson v. Maggio, 703 F.2d 909 (5th Cir. 1983)).

In Louisiana, the classification of prisoners is the duty of the Department of Corrections and an inmate, such as Plaintiff, has no right to a particular classification.  In

addition, "speculative, collateral consequences of prison administrative decisions do not create constitutionally protected liberty interests." <u>Luken v. Scott</u>, 71 F.3d 192, 193 (5th Cir. 1995) (citing <u>Meachum v. Fano</u>, 427 U.S. 215, 299 n.8, 96 S. Ct. 2532, 2540 n.8 (1976)). Thus, the prison officials' decision about the classification of a prisoner and the resulting consequences of such decision do not give rise to constitutionally protected liberty interests. For the same reasons, the hiring of prison guards is the duty of the Department of Corrections and an inmate, such as Plaintiff, has no right to certified correctional officers.

Accordingly, Plaintiff's claims against the Bossier Parish Sheriff's Department and the Bossier City Police Department with respect to the prison classification system and the qualifications for prison guards are frivolous because they lack an arguable basis in law and in fact, and they should be dismissed with prejudice as frivolous.

**Heck Claim**

Plaintiff seeks monetary compensation pursuant to his claim that a valid search warrant did not exist in his criminal case.  The United States Supreme Court held that in order to recover monetary compensation for an allegedly unconstitutional conviction or sentence or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a prisoner must show that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas." <u>Heck v. Humphrey</u>, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 2372 (1994).  <u>Heck</u> involved a civil rights claim brought by a state prisoner.  The Court dismissed the Section

1983 suit until plaintiff could demonstrate that his conviction or sentence had been invalidated.

When a claim comes within the parameters of the Heck teachings, it is not cognizable under 42 U.S.C. § 1983 so long as the validity of the conviction or sentence has not been called into question as defined therein, which requires dismissal of claims not meeting its preconditions for suit.  See Johnson v. McElveen, 101 F.3d 423, 424 (5th Cir. 1996).

Plaintiff is seeking monetary compensation for civil rights violations under Section 1983; therefore, he must prove that his conviction and/or sentence have been invalidated. He has not met this precondition, and his claim regarding the invalid search warrant must be dismissed until such time that he can demonstrate that his convictions and/or sentences have been invalidated.[2]

**Access to the Courts**

Prisoners  have a constitutional right of meaningful access to the courts. Degrate v. Godwin, 84 F.3d 768, 768-69 (5th Cir.1996) (quoting Bounds v. Smith, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977)).  However, this constitutional guarantee is not without limitation. Lewis v. Casey, 518 U.S. 343 (1996) (quoting Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261-62, 96 L.Ed.2d 64 (1987)).  In Lewis v. Casey, 518 U.S. 343, (1996), the Supreme Court reviewed its holding in Bounds v. Smith, 430 U.S. 817, (1977) which  is the source of a prisoner's constitutional right to "meaningful access to the courts."

---

[2]The Court notes that Plaintiff was a pre-trial detainee when he filed this action. However, he has since been convicted and sentenced.

While the Supreme Court reaffirmed a prisoner's right of access to the courts in <u>Lewis</u>, the Court limited the parameters of <u>Bounds</u> and set forth a standard to be applied when determining whether to grant relief for an access to the courts violation.  In so holding, the Court noted that a prisoner must show an actual injury, explaining that this requirement is derived from the doctrine of standing.  <u>Lewis</u>, 116 S.Ct. at 2179.  The Court used the analogy of a prisoner who is denied access  to that of a healthy prisoner who has been deprived of medical treatment.   In both cases, neither the access deprived prisoner nor the healthy prisoner have sustained constitutional injury, and thus, are not entitled to relief under Section 1983.  The Court emphasized that the court's role is to provide relief to claimants who have suffered actual harm, not to interfere with the management of prisons.

Accordingly, the Fifth Circuit has held that a prisoner cannot prevail on an access to the courts claim without proving an actual injury in non-frivolous litigation as a result of the defendant's alleged unconstitutional conduct.  <u>Ruiz v. United States</u>, 160 F.3d 273, 275 (5th Cir. 1998); <u>Chriceol v. Phillips</u>, 169 F.3d 313, 317 (5th Cir. 1999).

**Motion for bond in state court**

Plaintiff claims he attempted to mail approximately five motions for an OR bond from the Bossier Parish Maximum Security Facility to the state court.  He claims these motions were either lost or thrown away by Sgt. Wadsworth, Sgt. Jones, Deputy Martin, Deputy Porter, and Deputy Pierce.  Plaintiff admits that his sixth motion for OR bond was received by the state court and on January 12, 2006,  Judge Bruce Bolin denied it based on the alleged charges.

Application of the actual injury requirement to the instant claim supports a finding that Plaintiff's claim is frivolous. Plaintiff has clearly not satisfied the "actual injury" requirement because on January 12, 2006, Judge Bolin denied his sixth motion for OR bond.  Plaintiff has failed to demonstrate that he lost the right to commence, prosecute or appeal any suit as a result of the alleged refusal to mail his motions for OR bond.  Thus, he has failed to state any actual injury.

In addition, these claims are untimely.  Prescription began to run as to these claims prior to January 12, 2006.  The above entitled and numbered complaint was not signed by Plaintiff until February 26, 2007, and it was not filed by the Clerk of Court until March 1, 2007.  Plaintiff's claims are, therefore, prescribed.

Accordingly, Plaintiff's claims against Sgt. Wadsworth, Sgt. Jones, Deputy Martin, Deputy Porter, and Deputy Pierce regarding access to the court should be dismissed with prejudice as frivolous.

**Civil Action No. 06-cv-0109**

Plaintiff claims that on January 17, 2006, he filed civil action 06-cv-0109 in this Court.  Plaintiff claims Warden Dennis Weaver and Assistant Warden Stokes refused to complete his IFP application.  However, Plaintiff alleges in civil action 06-cv-0109 (Doc. 16) that this Court committed an error regarding his IFP application and that this is why is case was dismissed.  Thus, Plaintiff has failed to allege an actual injury which was the result of Warden Dennis Weaver and Assistant Warden Stokes's alleged unconstitutional conduct.

Accordingly, Plaintiff's claims against Warden Dennis Weaver and Assistant Warden Stokes regarding access to the court in civil action 06-cv-0109 should be dismissed with prejudice as frivolous.

**Civil Action 06-cv-0179**

Plaintiff claims that on January 30, 2006, he filed civil action 06-cv-0179 in this Court. He claims Warden Dennis Weaver and Assistant Warden Stokes refused to complete his IFP application in this action.

Application of the actual injury requirement to the instant claim supports a finding that Plaintiff's claim is frivolous. Plaintiff has clearly not satisfied the "actual injury" requirement because on March 22, 2006, he filed a motion to proceed in forma pauperis (Doc. 10) which this Court granted on March 27, 2006 (Doc. 11). Plaintiff has failed to demonstrate that he lost the right to commence, prosecute, or appeal any suit as a result of the alleged denial to sign the IFP application. Thus, he has failed to state any actual injury.

Accordingly, Plaintiff's claims against Warden Dennis Weaver and Assistant Warden Stokes regarding access to the court in civil action 06-cv-0179 should be dismissed with prejudice as frivolous.

**State Actor**

Plaintiff names inmate George Henderson as a defendant in this action. Plaintiff claims that on March 10, 2006, inmate George Henderson attacked him. He claims inmate Henderson struck him in the face with an object. Plaintiff claims that as a result of this attack, his eye socket, sinus cavity, and pallet were fractured. He also claims he lost

consciousness.  He claims that to this day, he still suffers nerve damage, impaired vision, and continuous pain and headaches.  He also claims he has lost pigmentation in his eye area and may be permanently disfigured.

Section 1983 prescribes redress for conduct by any person who, under color of state law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution and laws of the United States.  See 42 U.S.C. § 1983.  A plaintiff in a civil rights suit must show that the conduct of which he is complaining was committed by a person acting under color of state law.  Plaintiff has not alleged any acts that could give rise to a finding that George Henderson was a state actor for purposes of Section 1983.

Accordingly, Plaintiff's civil rights claims against inmate George Henderson should be dismissed as frivolous.

**Disciplinary Proceedings**

Plaintiff claims that on March 13, 2006, Assistant Warden Joe Lee attempted to coerce him into waving his right to a disciplinary hearing.  He claims Assistant Warden Joe Lee then organized a disciplinary board comprised of himself, the jail cook, and the maintenance man which was held in a storage room.  He claims the board justified the March 10, 2006 attack by finding that Plaintiff called inmate Henderson a name.  To the extent Plaintiff contends he was punished without due process, that claim is not cognizable.

In Sandin v. Connor, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court clarified when due process protections attach to the prison disciplinary process. The Supreme Court held that the Due Process Clause of the Fourteenth Amendment

does not afford an inmate a protected liberty interest that would entitle the inmate to procedural protections in the disciplinary process when the maximum sanction the inmate could receive does not "present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest" and the duration of the prisoner's original sentence is not affected.  Id. 132 L.Ed.2d at 431.  Under the guidance provided by Sandin, the Fifth Circuit has held that as a general rule, only sanctions which result in loss of good time credit or which otherwise directly and adversely affect release will implicate a constitutionally protected liberty interest.  Orellana v. Kyle, 65 F.3d 29, 31-32 (5th Cir. 1995).  Moreover, in commenting on Sandin, the Fifth Circuit noted that liberty interests which are protected by the Due Process Clause are generally limited to actions which affect the quantity of time rather than the quality of time served by a prisoner.  Madison v. Parker, 104 F.3d 765, 767 (5th Cir. 1997) citing Sandin, 115 S.Ct. at 2297.

Plaintiff in the instant case does not allege that the disciplinary action affected the duration of his sentence or that the disciplinary sentence was atypical of the prison environment.  In fact, Plaintiff does not allege that a disciplinary sentence was even rendered.

Accordingly, Plaintiff's claims against Assistant Warden Joe Lee that he was punished without due process of law are without merit and should be dismissed with prejudice as frivolous.

**Administrative Grievance Procedure**

Plaintiff claims that on March 17, 2006, he filed a grievance form.  He claims that on March 20, 2006, Assistant Warden Lee found that his grievance needed to be summarized

and was unreadable.  He claims that in May 2006, Assistant Warden Lee informed him that a grievance procedure did not exist.

Plaintiff complains his grievances were rejected and/or not processed in violation of his constitutional rights.  Inmates do not have a constitutionally protected right to a prison administrative grievance procedure.  See Oladipupo v. Austin, et al., 104 F.Supp.2d 626 (W.D. La. 2000); Brown v. Dodson, et al., 863 F. Supp. 284 (W.D. Va. 1994); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991).  A prison official's failure to comply with a state administrative grievance procedure is not actionable under Section 1983 because a state administrative grievance procedure does not confer any substantive constitutional right upon prison inmates.  Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).  Furthermore, state administrative grievance procedures are separate and distinct from state and federal legal procedures.  Thus, a prison official's failure to comply with state administrative grievance procedures does not compromise an inmate's right of access to the courts.  Flick, supra. Thus, insofar as Plaintiff alleges that the Defendants failed to comply with the prison administrative grievance procedure, those allegations, standing alone, do not provide an arguable basis for recovery under Section 1983.

Accordingly, these claims against Assistant Warden Lee regarding the administrative remedy procedure should be dismissed with prejudice as frivolous.

**Judicial Immunity**

It is well established that judges enjoy absolute immunity from liability for damages arising out of performance of their judicial duties, regardless of bad faith.  Pierson v. Ray,

386 U.S. 547, 87 S.Ct. 1213 (1967); Stump v. Sparkman, 435 U.S. 349, 98 S.Ct. 1099 (1978).  Acts are judicial in nature if they are (1) normal judicial functions (2) that occurred in the judge's court or chambers and were (3) centered around a case pending before a judge. Brewster v. Blackwell, 692 F.2d 387, 396-97 (5th Cir. 1982).

**Judge Stinson**

Plaintiff claims that on November 21, 2005, he appeared before Judge Stinson for his 72 hour hearing.  He admits that he was appointed an attorney during the hearing.  He complains that the hearing lasted only ten seconds and he was denied a full and fair hearing pursuant to La. C.Cr.P. art. 521. Plaintiff cannot allege claims against Judge Stinson because the conduct challenged unequivocally falls within the judge's authority as judicial officer of the court and in the ordinary exercise of judicial duties.

In addition, the claims against Judge Stinson are untimely.  Prescription began to run as to these claims in November 2005.  The above entitled and numbered complaint was not signed by Plaintiff until February 26, 2007, and it was not filed by the Clerk of Court until March 1, 2007.  Plaintiff's claims are, therefore, prescribed.

**Judge Bolin**

Plaintiff claims that on January 12, 2006, Judge Bolin denied his motion for OR bond. He complains that he denied the motion based only on the alleged charges.  Plaintiff cannot maintain these claims against Judge Bolin because the conduct challenged unequivocally falls within the judge's authority as judicial officer of the court and in the ordinary exercise of judicial duties.

In addition, the claims against Judge Bolin are untimely.  Prescription began to run as to these claims in January 2006.  The above entitled and numbered complaint was not signed by Plaintiff until February 26, 2007, and it was not filed by the Clerk of Court until March 1, 2007.  Plaintiff's claims are therefore prescribed.

**Judge Robinson**

Plaintiff claims  Judge Robinson denied his motions for discovery and inspection.  He complains Judge Robinson denied his motions on the erroneous basis that a court appointed had previously filed said motions.  He claims Judge Robinson did not respond to his request that criminal charges be filed against George Henderson, Warden Toloso, Assistant Warden Lee and staff.  Plaintiff claims that in August 2006, he filed a personal injury action in the Louisiana Twenty-Sixth Judicial District Court that Judge Robinson denied.  He claims Judge Robinson obstructed justice by his denial.  Plaintiff cannot maintain these claims against Judge Robinson because the conduct challenged unequivocally falls within the judge's authority as judicial officer of the court and in the ordinary exercise of judicial duties.

Accordingly, Plaintiff's civil rights claim against Judge Stinson, Judge Bolin and Judge Robinson should be dismissed as frivolous.

**Magistrate Judge Robert Shemwell**

Plaintiff claims that Clerk of Court and Magistrate Judge Robert Shemwell[3] endangered him by continuing to send memorandum orders requiring that he have prison officials complete his IFP applications.  He claims he sent Robert Shemwell documentary proof that the accounts officer had completed the application, but that Warden Weaver, Assistant Warden Stokes and other officers refused to return the completed form to him.  He claims Robert Shemwell returned the documentary proof to him and issued another memorandum order requiring that the IFP application be completed by the financial officer and submitted to the Court.  He claims Robert Shemwell failed to contact the Bossier Parish Sheriff's Department or Accounts Officer Burton regarding the respondents' misconduct and criminal actions regarding their failure to return the completed IFP application to him. Plaintiff claims that on March 10, 2006, Robert Shemwell finally mailed the IFP application and memorandum order to the accounts officer.  Plaintiff claims the respondents then responded to the memorandum order and completed the IFP application.  Plaintiff claims that if Robert Shemwell had done this sooner, he would have been spared threats, humiliation, mental stress, pain, transfers, and the conspiracy to inflict suffering upon him.

Plaintiff cannot maintain his claims against Magistrate Judge Shemwell because the conduct challenged unequivocally falls within the judge's authority as judicial officer of the

---

[3]Robert Shemwell held a dual role of Clerk of Court and Part-Time Magistrate Judge in the United States District Court for the Western District of Louisiana. It was in his capacity as Magistrate Judge that he issued Memorandum Orders regarding Plaintiff's applications to proceed in forma pauperis.

court and in the ordinary exercise of judicial duties.  Accordingly, Plaintiff's civil rights claim against Magistrate Judge Shemwell should be dismissed as frivolous.

**Ineffective Assistance of Counsel**

Plaintiff claims that in January 2006, he appeared in state court before Judge Parker Self.  He claims his court appointed attorney Mary Jackson waived his right to the reading of the indictment, thereby waiving his right to an arraignment.  He further claims she pleaded on his behalf.  He claims her actions provided him with ineffective assistance of counsel and that she acted in concert with the State's failure to obtain an indictment and institute prosecution against him.

Section 1983 prescribes redress for conduct by any person who, under color of state law, acts to deprive another person of any right, privilege or immunity secured by the Constitution and laws of the United States.  42 U.S.C. § 1983.  A plaintiff in a civil rights suit must show that the conduct complained of was committed by a person acting under color of state law.  Neither privately obtained nor court appointed defense attorneys act under color of state law for purposes of Section 1983.

Both a retained and a court appointed attorney serve their client, the accused; they do not serve the state.  They serve a private function for their client that follows from the very nature of the attorney-client relationship and for which no state office or authority are needed.  Hence, neither a retained nor a court appointed attorney acts under color of state law and cannot be held liable under Section 1983. See Polk County v. Dodson, 454 U.S. 312 (1981); Ellison v. DeLa Rosa, 685 F.2d 959, 960 (5th Cir. 1982) (citing Polk County, supra);

Page 22 of  27

United States ex rel. Simmons v. Zibilich, 542 F.2d 259, 261 (5th Cir. 1976);  Nelson v. Stratton, 469 F.2d 1155 (5th Cir. 1972); Richardson v. Fleming, 651 F.2d 366 (5th Cir. 1981); Mills v. Criminal District Court #3, 837 F.2d 677 (5th Cir. 1988)(citing Nelson, supra).

Accordingly, Plaintiff's civil rights claims against Mary Jackson should be dismissed as frivolous.

**Prosecutorial Immunity**

Plaintiff claims he attempted to file criminal charges against Warden Toloso, Assistant Warden Joe Lee, and their staffs.  He claims he submitted requests to the Bossier Parish District Attorney.  He complains that he never responded to his request.

Prosecutors have absolute immunity when acting in a quasi-judicial mode.  Imbler v. Pachtman, 424 U.S. 409, 106 S.Ct. 984, 47 L.Ed.2d 128 (1976); Geter v. Fortenberry, 849 F.2d 1550 (5th Cir. 1988).  The Fifth Circuit has repeatedly recognized the purpose of the immunity defense is to protect public officials from undue interference with their duties and from disabling threats of liability.  Geter, 849 F.2d at 1552.  Absolute immunity is immunity from suit rather than from liability.  Elliot v. Perez, 751 F.2d 1472 (5th Cir. 1985).  The Fifth Circuit "has likewise accepted the premise that the protected official should be sheltered from trial and pre-trial preparation as well as liability." Id. at 1478.

The conduct challenged unequivocally falls within the authority of the District Attorney, as quasi-judicial officer of the court and in the ordinary exercise of his

quasi-judicial duties.  Accordingly, Plaintiff's claims against the District Attorney should be dismissed as frivolous.

**Failure to State a Claim**

Plaintiff names Agent T. Smith, Officer M. Teutsch, Deputy Hall and Deputy Prather as defendants.  A Section 1983 plaintiff has long been required to plead his case with "factual detail and particularity," not mere conclusory allegations.  Elliot v. Perez, 751 F.2d 1472, 1473 (5th Cir. 1985)(Judgment vacated on other grounds); Hale v. Harney, 786 F.2d 688 (5th Cir. 1986).  The Supreme Court has abolished this heightened pleading standard for claims against municipalities, Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 113 S.Ct. 1160 (1993), but the requirement remains firmly in place for claims against individual public officials.  See Schultea v. Wood, 47 F.3d 1427 (5th Cir.1995).

In this case, Plaintiff has named individual officials as defendants and is therefore required to give factual details regarding their alleged constitutional rights violations.  Plaintiff has failed to do so as to these names Defendants.  Accordingly, Agent T. Smith, Officer M. Teutsch, Deputy Hall and Deputy Prater should be dismissed from this complaint.

**Conclusion**

Because Plaintiff filed this proceeding in forma pauperis ("IFP"), if this Court finds Plaintiff's complaint to be frivolous, it may dismiss the complaint as such at any time, before or after service of process, and before or after answers have been filed.  See 28 U.S.C. § 1915(e); Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986); Spears v. McCotter, 766

F.2d 179, 181 (5th Cir. 1985).  District courts are vested with extremely broad discretion in making a determination of whether an IFP proceeding is frivolous and may dismiss a claim as frivolous if the IFP complaint lacks an arguable basis either in law or in fact.  See Hicks v. Garner, 69 F.3d 22 (5th Cir. 1995); Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993); Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Accordingly;

**IT IS RECOMMENDED** that the following claims be **DISMISSED WITH PREJUDICE** as frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(I) and (ii):

(1) Claims against Sgt. Shelton, the Bossier City Police Department, and the Bossier City Police Chief arising out of his November 18, 2005 arrest; (2) Claims against the Parish of Bossier arising out of his November 19, 2005 transfer; (3) Claims against Medical Assistant Thornhill and Medical Assistant David arising out of his November 19, 2005 request for medical treatment;  (4) Claims against Warden Weaver, Assistant Warden Stokes, Sgt. Wadsworth, Sgt. Jones, Deputy Pierce, Deputy Porter, and Deputy Martin arising out of denial of access to the courts while at Bossier Parish Maximum Security Facility from November 10, 2005 until February 22, 2005; (5) Claims against Deputy Porter and Deputy Martin arising out of the search of his cell while incarcerated at the Bossier Parish Maximum Security Facility from November 10, 2005 until February 22, 2005; (6) Claims against Warden Weaver, Assistant Warden Stokes, Medical Officer Thornhill, and Medical Officer David arising out of his February 20, 2006 medical examination; (6) Claims against Assistant

Page 25 of  27

Warden Stokes arising out of the February 22, 2006 confrontation; (7) Claims against Medical Assistant Broadenski arising out of his February 24, 2005 medical visit; (8) Claims against the Bossier Parish Sheriff's Department and the Bossier City Police Department arising out of his classification claims; (9) Claims against Sgt. Wadsworth, Sgt. Jones, Deputy Martin, Deputy Porter, Deputy Pierce, Warden Dennis Weaver and Assistant Warden Stokes arising out of the denial of access to the courts; (10) Claims against George Henderson; (11) Claims against Assistant Warden Lee arising out of the prison disciplinary proceedings; (12) Claims against Assistant Warden Lee arising out of the prison administrative grievance procedure; (13) Claims against Judge Stinson, Judge Bolin, Judge Robinson and Magistrate Judge Robert Shemwell; (14) Claims against Mary Jackson; (15) Claims against the District Attorney; and (16) Claims against Agent T. Smith, Officer M. Teutsch, Deputy Hall and Deputy Prather.[4]

**IT IS FURTHER RECOMMENDED** that Plaintiff's civil rights claim seeking monetary compensation for his allegedly unconstitutional conviction and/or sentence be **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. § 1915(e) until such time as the Heck conditions are met.

---

[4]Plaintiff still has claims remaining against the Bossier Parish Sheriff's Department, Sheriff Larry C. Dean, the Parish of Bossier, Warden Mark Toloso, Warden Dennis Weaver, Assistant Warden Joe Lee, Assistant Warden Stokes, Deputy Griffin, Deputy Orr, Deputy Hawn, Doctor Robert Russel, Doctor Haverton, Deputy J. Martin, Deputy Rodgers, Sgt. Parish, Bossier Parish Minimum Security Facility Medical Staff, and Steve Broadenski.

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objection within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendations set forth above, within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking, on appeal, the proposed factual findings and legal conclusions that were accepted by the district court and that were not objected to by the aforementioned party.  See Douglas v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

**THUS DONE AND SIGNED**, in chambers, in Shreveport, Louisiana, on this 22nd day of February, 2010.

_____

MARK L. HORNSBY

UNITED STATES MAGISTRATE JUDGE
